UNITED STATES of America, Plaintiff–Appellee,

v.

Martin D.L. HAYNES, Defendant–Appellant.

No. 91–3858.

United States Court of Appeals, Seventh Circuit.

Argued May 21, 1992.

Decided Aug. 4, 1992.

Donna Eide (argued), Office of the U.S. Atty., Indianapolis, Ind., for U.S.

William E. Marsh, Hamid Kashani (argued), Indianapolis, Ind., for Haynes.

Before CUMMINGS and FLAUM, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

FLAUM, Circuit Judge.

The Drug Quantity Table of the Sentencing Guidelines provides that the base offense level for marijuana offenses shall reflect the weight of the marijuana for which the convicted defendant is deemed responsible. U.S.S.G. §§ 2D1.1(a)(3), 2D1.1(c) (1991). By "marijuana," the Table means consumable (*i.e.*, smokable) marijuana, not the mature stalks of marijuana plants. *See* 21 U.S.C. § 802(16); *United States v. Garcia*, 925 F.2d 170, 172–73 (7th Cir.1991). It follows naturally that courts typically use the Table to calculate the sentences of individuals convicted of the possession or distribution of consumable marijuana, or of conspiracies to do the same. *See, e.g., Garcia, supra; United States v. Gallegos*, 922 F.2d 630 (10th Cir. 1991).

A separate Guideline—actually, a postscript to the Table—provides that if an offense involves 50 or more marijuana plants, each plant shall be treated for sentencing purposes as the equivalent of one kilogram of marijuana. U.S.S.G. § 2D1.1(c) n.* (1991). Courts typically use this Guideline, to which we refer for convenience sake as the "equivalency provision," to calculate sentences where the government has derailed a conspiracy in the process of growing marijuana plants, prior to the time the plants have been harvested and processed into consumable product. *See, e.g., United States v. Webb*, 945 F.2d 967 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1228, 117 L.Ed.2d 463 (1992); *United States v. Bechtol*, 939 F.2d 603 (8th Cir.1991); *United States v. Cor-*

*ley,* 909 F.2d 359 (9th Cir.1990); *United States v. Bradley,* 905 F.2d 359 (11th Cir. 1990); *United States v. Lewis,* 762 F.Supp. 1314 (E.D. Tenn.) (involving both harvested and unharvested plants), *aff'd without opinion,* 951 F.2d 350 (6th Cir.1991). For example, an individual caught with 150 marijuana plants is sentenced as if he were caught with 150 kilograms of consumable product. The equivalency provision is certainly not based upon a determination that one marijuana plant yields one kilogram of consumable product, for the actual yield is nowhere near that high. *See The Marijuana Crop; Moonshine Again,* The Economist, Oct. 20, 1990, at 25 (plant can yield up to one pound of marijuana). Rather, it reflects Congress' judgment that an individual who grows 150 plants is just as culpable as one who has distributed 150 kilograms of marijuana. *See United States v. Motz,* 936 F.2d 1021, 1025 (9th Cir.1991); *United States v. Fitol,* 733 F.Supp. 1312, 1315 (D. Minn.1990). We recently upheld the equivalency provision against an equal protection and due process challenge in *United States v. Webb, supra.*

The case *sub judice* presents a twist on the run-of-the-mill fact patterns discussed above, and in so doing poses an issue of statutory interpretation. Like *Webb* and *Bechtol,* it involves a marijuana growing operation, but unlike those cases, the operation was not thwarted prior to harvest. The operation in this case owned a marijuana farm, harvested a crop of about 12,500 mature plants, processed the plants into approximately 400 kilograms of consumable marijuana, and distributed the fruits of its labor in the wholesale marijuana market. The defendant, Martin D.L. Haynes, worked at the farm for about one year. During that time he helped transplant seedlings, guard the farm, tend the fields, and harvest and process the mature plants, but played no part in the actual distribution or sale of consumable marijuana. The government charged Haynes under 21 U.S.C. §§ 841(a)(1) and 846 with conspiracy to manufacture and distribute over 1000 marijuana plants, and Haynes pled guilty. We must decide whether the equivalency provision applies here—in other words,

whether Haynes' sentence should be based upon the 12,500 plants grown at the farm (treated under the provision as the equivalent of 12,500 kilograms of consumable marijuana), or rather the 400 kilograms of consumable marijuana actually processed there.

■ This issue, which to our knowledge is one of first impression, has significant ramifications for sentencing in this particular type of marijuana case, as the present facts clearly illustrate. The Drug Quantity Table assigns offenses involving 400 kilograms of marijuana a base offense level of 28; for Haynes, whose criminal history category is I, that level yields a presumptive sentencing range of 78–97 months. In contrast, offenses involving 12,500 plants, treated as the equivalent of 12,500 kilograms, are assigned a base offense level of 36, which yields a presumptive sentencing range for Haynes of 188–235 months. Haynes' plea agreement left it to the district court to determine the appropriate base offense level; the court chose 36. On appeal, Haynes contends that the court misinterpreted the equivalency provision by applying it to his case. We affirm.

We review *de novo* the district court's interpretation of the Guidelines. *United States v. Teta,* 918 F.2d 1329, 1332 (7th Cir.1990). The equivalency provision reads, in relevant part:

> In the case of an offense involving ... 50 or more marihuana plants, treat each plant as equivalent to 1 KG of marihuana.... *Provided,* however, that if the actual weight of the marihuana is greater, use the actual weight of the marihuana.

U.S.S.G. § 2D1.1(c) n.* (emphasis in original). Haynes contends that this provision authorizes district courts to calculate sentences based upon the 1 plant = 1 kilogram conversion factor only where, as in *Webb* and *Bechtol,* the government has derailed a marijuana growing operation prior to harvesting and processing; in these situations, courts must use the conversion factor because there is no actual marijuana to weigh. In contrast, according to Haynes, whenever an operation harvests its plants and produces consumable mari-

**572**

juana, a court must base sentence upon the actual weight of the marijuana so produced.

■ Haynes' contentions are not persuasive, and we need look no further than the plain language of the equivalency provision to see why. *Hughey v. United States,* 495 U.S. 411, 415, 110 S.Ct. 1979, 1982, 109 L.Ed.2d 408 (1990). The first sentence puts forth a general rule: use the 1 plant = 1 kilogram conversion factor when an offense involves 50 or more marijuana plants. The final sentence—which begins with the qualifier *"Provided,* however"—reads as an exception to this rule. It directs a court to use the actual weight of the marijuana produced from the plants at issue *only* if that weight is greater than the weight calculated with the conversion factor.[†] But implicit in this exception is the converse: use the weight calculated with the conversion factor if it is greater than the actual weight of the consumable marijuana. Were Haynes correct that the provision, as a general matter, directed courts to automatically base sentence upon the actual weight of consumable product, the final sentence would be superfluous; it follows that Haynes' interpretation is incorrect. *See Weinberger v. Hynson, Westcott & Dunning, Inc.,* 412 U.S. 609, 633, 93 S.Ct. 2469, 2485, 37 L.Ed.2d 207 (1973) ("all parts of a statute, if possible, are to be given effect"). Simply stated, had Congress intended courts to base sentence upon the actual weight of consumable product in *every* case where a growing operation harvests and processes its plants, it could have quite easily expressed such an intent in the provision. However, the statutory language, by its terms, directs courts to disregard weights calculated with the conversion factor only in cases where the actual weight of consumable product is greater. Any other reading of the provision is illogical.

■ In a similar vein, Haynes also contends that his crime does not "involve marijuana plants" because the plants he cultivated were ultimately processed into consumable marijuana. This contention, too, contravenes the plain language of the Guideline. The final sentence of the equivalency provision clearly contemplates that individuals who succeed in harvesting plants and processing marijuana therefrom are still considered to have committed offenses "involving ... marijuana plants." Lest our holding be read too broadly, we emphasize that the term "offense involving ... marijuana plants" encompasses only the cultivation and harvesting of marijuana plants and the processing of plants into consumable product. As the government recognizes, it does not encompass the activities of those individuals who enter the marijuana distribution chain after the processing stage. Haynes' activities at the farm place him squarely in the former category.

Read most naturally, the provision directs courts in cases involving marijuana plants to base sentence upon the greater of (1) the weight calculated with the 1 plant = 1 kilogram conversion factor, and (2) the actual weight of the marijuana. *United States v. Corley, supra,* does not dictate a contrary result. Granted, *Corley* provides that "when live marijuana plants are found, their quantity is appropriate for determining base offense level ... [but] [w]hen the marijuana leaves have been dried, their weight should be used." *Corley,* 909 F.2d at 361; *see also Bradley,* 905 F.2d at 361. The statement regarding dried marijuana is actually a dictum, for the case involved a defendant caught with live marijuana plants. More important, *Corley* is outdated, for it interprets a prior version of the equivalency provision which had created substantial confusion regarding sentencing in cases involving marijuana plants. *See Bradley,* 905 F.2d at 360. The current version of the provision clarified matters, *see id.* at 360 & n. 2, and directs the result we reach here.

[†] As we have already observed, the yield of one marijuana plant is far less than one kilogram of consumable marijuana. Accordingly, it is unlikely that courts will ever employ this exception when imposing sentence for offenses involving 50 or more marijuana plants. For offenses involving fewer than 50 marijuana plants, however, the equivalency provision directs courts to treat each plant as the equivalent of 100 grams, not one kilogram, of marijuana. U.S.S.G. § 2D1.1(c) n. *. The exception would therefore come into play if, in the context of such an offense, each plant yielded, on average, greater than 100 grams of marijuana.

Finally, Haynes argues that sentencing him on the basis of 12,500 kilograms of marijuana, one for each plant, violates the overriding principles of proportionality and consistency in the Sentencing Guidelines. *See* U.S.S.G. Manual 2–4 (Policy Statement) (Nov. 1991). Haynes worked at a farm whose entire crop yielded 400 kilograms of marijuana. Assigning him a base offense level of 36 places him in the same presumptive sentencing category as a dealer who distributed 30,000 kilograms of marijuana—75 times more marijuana than Haynes grew—on the street. The disparity is indeed glaring, but provides no basis for invalidating his sentence or the Guideline under which it was imposed. In upholding the constitutionality of the equivalency provision in *Webb*, we observed that " 'judgments concerning what conduct should be made criminal and how heavily it should be punished are for Congress rather than courts to make.' " 945 F.2d at 969 (quoting *United States v. Rose*, 881 F.2d 386, 389 (7th Cir.1989)); *see also Chapman v. United States*, — U.S. —, — – —, 111 S.Ct. 1919, 1927–29, 114 L.Ed.2d 524 (1991). Similar deference guides our assessment of whether sentences conform to the principles of proportionality and consistency underlying the Guidelines. It appears that Congress has taken a supply-side approach to our nation's marijuana problem by determining that marijuana growers deserve greater punishment than marijuana distributors. *See United States v. Eves*, 932 F.2d 856, 859 (10th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 236, 116 L.Ed.2d 192 (1991); *Fitol*, 733 F.Supp. at 1315. Haynes, eschewing any constitutional arguments, considers this approach unjust. One can find worthy arguments on either side of the issue, and that must end the matter, for we cannot second-guess a reasonable judgment of Congress in this context.

AFFIRMED.